FREUND & BRACKEY LLP
Thomas A. Brackey II (SBN 162279)
    *tbrackey@freundandbrackey.com*
Craig A. Huber (SBN 159763)
    *cahuber@freundandbrackey.com*
Stephen P. Crump (SBN 251712)
    *scrump@freundandbrackey.com*
427 North Camden Drive
Beverly Hills, CA 90210
Tel: 310-247-2165
Fax: 310-247-2190

BYELAS & NEIGHER
Alan Neigher (*admitted pro hac vice*)
    *aneigher@snet.net*
1804 Post Road East
Westport, CT 06880
Tel: 203-259-0599
Fax: 203-255-2570

LAW OFFICES OF A. EDWARD EZOR
A. Edward Ezor (SBN 50469)
    *aeezor@covad.net*
201 South Lake Avenue
Pasadena, CA 91101-3016
Tel: 626-568-8098
Fax: 626-568-8475

Attorneys for Plaintiff,
ANN KIRSTEN KENNIS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN KIRSTEN KENNIS;<br><br>    Plaintiff,<br><br>v.<br><br>VAMPIRE WEEKEND, INC.; *et al.*,<br><br>    Defendants. | Case No. CV 10-6087 VBF (AJWx)<br><br>[*Assigned to the Honorable Valerie B. Fairbank*]<br><br>PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>[*Separate Statement of Uncontroverted Facts and Declarations of Alan Neigher and Stephen Crump filed concurrently herewith*] |
| *AND RELATED CROSS-ACTION* | Date:  June 27, 2011<br>Time:  1:30 p.m. |

---

1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 27, 2011, at 1:30 p.m. in Courtroom 9 of the U.S. District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, California 90012, Plaintiff ANN KIRSTEN KENNIS ("Ms. Kennis") will, and hereby does, move the Court pursuant to Federal Rule of Civil Procedure 56(d)(2) for an order of partial summary judgment with respect to Defendants VAMPIRE WEEKEND, INC. ("VWI") and XL RECORDING, LTD. ("XL")'s liability under Plaintiff's first and second causes of action for statutory and common-law misappropriation of identity.

The Motion will be on the ground that there is no genuine issue as to any material fact establishing VWI and XL's liability for misappropriation of Plaintiff's identity, namely that VWI and XL knowingly used her likeness in connection with their album, "Contra," with live performances of the band Vampire Weekend, with various related merchandise, and for purposes of advertising, selling, or soliciting purchases of the above, all without Plaintiff's prior consent.

This Motion will be based upon this Notice, the Memorandum of Points and Authorities in Support of the Motion, the Declarations of Alan Neigher and Stephen Crump in support of the Motion, and all other pleadings and papers filed in this action, and such further evidence and argument as may be presented at the hearing of this matter.

This motion is made following the conference of counsel pursuant to L.R.7–3 which took place in substantial part on April 25, 2011.

///
///
///

1 | DATED: May 17, 2011            FREUND & BRACKEY LLP

                 By:    /Thomas A. Brackey II/
                             Thomas A. Brackey II,
                             Craig A. Huber
                             Stephen P. Crump

                             Attorneys for Plaintiff,
                             ANN KIRSTEN KENNIS

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

Freund & Brackey LLP
427 North Camden Drive
Beverly Hills, CA 90210

## TABLE OF CONTENTS

I. INTRODUCTION……………………………………………………………..3

II. FACTUAL STATEMENT……………………………..……………………….5

III. ARGUMENT…………………………………………………………………….7

    A. **Legal Standard for Summary Judgment on Liability**…...............7

    B. **There is No Genuine Issue as to any Material Fact as to Defendants VWI's and XL's Liability Under Plaintiff's Claims for Common-Law and Statutory Misappropriation.**…………………………..….8

        1. *Common Law Misappropriation*……..…................……...8

        2. *Statutory Misappropriation*……...............……………...9

        3. *VWI and XL are Liable Under Both the Common-Law and Statutory Causes of Action for Misappropriation.*…...…...…10

IV. CONCLUSION...............................................................................12

# TABLE OF AUTHORITIES

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. Proc. 56..................................................................................2, 6, 7

**U.S. SUPREME COURT CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)..........................7

**NINTH CIRCUIT COURT OF APPEALS CASES**

*Downing v. Abercrombie & Fitch* 265 F.3d 994 (9th Cir. 2001)..............9, 10

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010)..............................9

*Lies v. Farrell Lines, Inc.*, 641 F.2d 765 (9th Cir. 1981)...............................7

*Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468 (9th Cir 1994).................................................................................................7

**NINTH CIRCUIT DISTRICT CASES**

*First Nat'l Ins. Co. v. FDIC*, 977 F. Supp. 1051 (S.D. Cal. 1997)................7

*Peliculas y Videos Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*, 302 F. Supp. 2d 1131 (C.D. Cal. 2004)..................................................7

*Sebastian Int'l, Inc. v. Russolillo*, 151 F. Supp. 2d 1215 (C.D. Cal. 2001).................7

**OTHER CIRCUIT COURT CASES**

*Beal Bank, SSB. v. Pittorino*, 177 F.3d 65 (1st Cir. 1999)............................7

*Haelan Laboratories v. Topps Chewing Gum*, 202 F.2d 866, 868 (2d Cir. 1953)..8–9

**CALIFORNIA STATUTES**

Cal. Civ. Code § 3344................................................................................9, 10

**CALIFORNIA SUPREME COURT CASES**

*Forsher v. Bugliosi*, 26 Cal. 3d 792 (1980).....................................................8

*Lugosi v. Universal Pictures,* 25 Cal. 3d 813 (1979)......................................8

**CALIFORNIA COURT OF APPEALS CASES**

*Eastwood v. Sup. Ct.*, 149 Cal. App. 3d 409 (1983)...................8n.2, 9, 10

*Fairfield v. American Photocopy Equip. Co.*, 138 Cal. App. 2d 82 (1955)...............9

**CALIFORNIA COURT OF APPEALS CASES (cont'd)**

*Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400 (2007)..........8

*Johnson v. Harcourt, Brace, Jovanovich, Inc.,* 43 Cal. App. 3d 880 (1974)............10

*Kapellas v. Kofman*, 1 Cal. 3d 20 (1969)..........8

*Newton v. Thomason*, 22 F.3d 1455 (1994)..........10

*Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318 (1997).......10

**TREATISES**

PROSSER, LAW OF TORTS (3d Ed.)..........8

**LAW REVIEW ARTICLES**

Prosser, *Privacy*, 48 CAL. REV. 383, 389..........8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case arises from the mass-scale misappropriation of Plaintiff Ann Kennis' image by a rock band that proceeded to use her portrait in connection with virtually every aspect of the band's activities during late 2009 and 2010.

Vampire Weekend, one of the most recognized breakthrough American rock bands in recent history, contrived an ingenious viral marketing technique to promote their album, *Contra*, a follow-up to their successful debut album. In the months that preceded the album's release, an unlabeled Polaroid photograph of a mysterious, comely woman in a yellow Polo shirt began to crop up on U.S. and U.K. music websites as a banner ad, linking to a cryptic website featuring a blown-up version of the same Polaroid. Just as a buzz began to grow, a week later, new versions of the image began to appear across the Internet, this time emblazoned with an announcement for Vampire Weekend's new album *Contra*. The photograph would be the cover of their new album, and a newly minted symbol for the band.

Still, however, no explanation was offered for the image behind the album. As questions accumulated—who is this person and what did she have to do with the band—so did the buzz behind the album's January release. Fans eagerly anticipated that the album itself would answer some of those questions.

As expected, upon the album's release, fans and non-fans alike flocked to purchase *Contra*, undoubtedly in part enticed by its mysterious cover. *The album debuted at number one on the Billboard Top 200 and it remains a top-seller*. The band continued to use the photograph as an iconic promotion—in concerts, advertisements, and even merchandise. In fact, the image presently is the landing point for Vampire Weekend's website and on hundreds of thousands of albums.

The questions behind the meaning of this mysterious photograph are now answered through Ms. Kennis' lawsuit.

In the months leading up to the January 2010 release of *Contra*, Vampire Weekend discovered the image on the photo sharing website, flickr.com. They had been looking for a way to capture the essence of their new album and the brand of hip, New York "preppiness" that people would associate with the band. Attracted by the sense evoked by the image that the woman "was on the cusp of something . . . match[ing] the vibe of the new album,"[1] the band contacted Brody and negotiated with him for a release agreement signed by the alleged model, "Kirsten Johnson."

The "Kirsten Johnson" release turned out to be a forgery. The actual model in the photograph, Plaintiff Ann Kirsten Kennis, is a retired Connecticut resident who enjoyed a successful career as an advertising model in New York in the 1980's. She never met Brody. She was never approached by anyone representing Vampire Weekend or its record label, XL Recordings, Ltd. She most assuredly did not consent to have her image appear on music albums distributed across the world and displayed on concert stages, advertisements and merchandise.

Though the band alleges they acted in good faith, no party can dispute that Vampire Weekend and its record label, XL Recordings, Ltd. are liable under California's common law and statutory causes of action for misappropriation. The band and its record label obtained a photograph of Plaintiff with a sham release and proceeded to use it to great commercial success on their album *Contra* and supporting materials, all without Plaintiff's permission. While the degree to which this commercial success is attributable to the photograph—the ultimate measure of Plaintiff's recovery—is still in dispute, Vampire Weekend's *liability* is not. Accordingly, this court should streamline this dispute and grant partial summary

---

[1] *See* Interview with Ezra Koenig, member, Vampire Weekend, *Vampire Weekend's Ezra Koenig Talks New Album, Confronts the Haters*, PITCHFORK, October 1, 2009, http://pitchfork.com/news/36671-vampire-weekends-ezra-koenig-talks-new-album-confronts-the-haters/) (Declaration of Stephen Crump at Paragraph 2, Exhibit A).

5

judgment with respect to liability for Plaintiff's statutory and common-law claims for misappropriation of identity.

## II.     FACTUAL STATEMENT

In the early 1980's, Plaintiff Ann Kirsten Kennis ("Kennis") enjoyed a successful modeling career in New York City, during which her photographic likeness appeared in high-profile advertisements for clothing, jewelry, cosmetics, and automobiles, among other products. Uncontroverted Fact ("UF") No. 1.

Defendant Vampire Weekend, Inc. ("VWI"), the operating entity for the similarly named rock band originating in New York City, signed a recording agreement with Defendant XL Recordings, Ltd. ("XL") on July 30, 2007. UF No. 2.

On or about May 19, 2009, Rostam Batmanglij, a member of Vampire Weekend, contacted Defendant Tod Brody ("Brody") regarding a photographic image of Kennis he had found on the Internet to use for the *Contra* album cover (the "Image"). UF No. 3. The Image constitutes a photograph of Kennis wearing a yellow Polo-monogrammed shirt against a bare wall. UF No. 4.

The bandmembers decided to use the Image for the *Contra* album cover because "[t]he ambiguity of her age and expression made [them] feel like she was on the cusp of something, which really matche[d] the vibe of the new album." UF No. 5.

Brody represented to VWI during negotiations that he had taken the photograph of Kennis in the Image, but he had in fact not. UF No. 6. In reality, Brody never had a personal or professional relationship with Kennis, nor did he ever know Kennis or photograph her. UF No. 7. Nonetheless, VWI and Brody eventually entered into an agreement on July 3, 2009, whereby VWI paid Brody a sum of $5,000 for an assignment of his purported copyright in the Image and a "Model Agreement" signed by the purported model in the Image, "Kirsten Johnsen"

(or "Johnson," both spelling variations appeared on the release) releasing the rights to use the Image to VWI. UF No. 8.

In the spring and summer of 2009, VWI recorded the album eventually entitled *Contra*. UF No. 9. On or around September 9, 2009, in order to generate national exposure for the *Contra* album cover, VWI and XL caused unlabeled copies of the Image to be displayed on the front pages of several notable music websites. By clicking these "banner ads," visitors were routed to www.ithinkuracontra.com, a conceptual "project website" created by VWI and XL. Initially www.ithinkuracontra.com also displayed only an unlabeled copy of the Image. UF No. 10.

On or around September 16, 2009, the band officially announced the release of the *Contra* album. The band's websites, www.vampireweekend.com and www.ithinkuracontra.com featured large copies of the Image, now accompanied by text announcing the *Contra* album title, recordings, and release date. After the initial album announcement, VWI and XL used the Image in promotional posters and merchandise in order to popularize the album in anticipation of its release in January of 2010. UF No. 11.

VWI and XL released the album *Contra* on January 11, 2010 in the United Kingdom, and on January 12, 2010 in the United States. UF No. 12. The final album art prominently features a clearly recognizable reproduction of the Image with the name of the band and album appearing above and below the Image, respectively, such that it is the first visual that consumers see when purchasing the album. UF No. 13.

The *Contra* album debuted #1 on the Billboard 200 and as of October 2010 had sold approximately 807,814 units. UF No. 14. Since the album's release, VWI and XL have continued to use the Image to promote, advertise and sell the *Contra* album and other goods in commerce. UF No. 15.

## III. ARGUMENT

### A. Legal Standard for Summary Judgment on Liability

Summary judgment is appropriate when "there is no genuine issue as to any material fact as to a particular claim or defense." In such cases, the court may grant summary judgment in the party's favor "on all or part thereof." Fed. R. Civ. P. 56(a), (b); *see also Beal Bank, SSB. v. Pittorino*, 177 F.3d 65–68 (1st Cir. 1999). The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir 1994).

A court may grant summary adjudication on specific issues without granting summary judgment as to the entire claim for relief, to narrow the issues for trial. *Sebastian Int'l, Inc. v. Russolillo*, 151 F. Supp. 2d 1215, 1217 (C.D. Cal. 2001); *First Nat'l Ins. Co. v. FDIC*, 977 F. Supp. 1051, 1055 (S.D. Cal. 1997). This eliminates useless facts and issues over which there is no controversy that would tend to confuse and complicate a lawsuit. *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 (9th Cir. 1981); *Peliculas y Videos Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*, 302 F. Supp. 2d 1131, 1133 (C.D. Cal. 2004). Indeed, Federal Rule of Civil Procedure 56(d)(2) specifically allows for a determination of liability through summary judgment, stating: "[a]n interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages."

An issue of material fact is genuine only if the evidence could lead a reasonable jury to find for the non-moving party under the applicable standard of proof. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

///
///
///

B.  **There is No Genuine Issue as to any Material Fact as to Defendants VWI's and XL's Liability Under Plaintiff's Claims for Common-Law and Statutory Misappropriation.**

Summary judgment on the issue of liability both under the common law cause of action for misappropriation and statute-based claim is appropriate because the undisputed facts establish that the defendant's knowingly used Ms. Kennis' identity to their commercial advantage without her consent resulting in injury to her.

1.  *Common Law Misappropriation*

California has long recognized a common-law cause of action for misappropriation, or unauthorized use of a person's likeness, which has been classified as one of four "invasion of privacy" torts.[2]  *See Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 408–409 (2007); *see also Kapellas v. Kofman*, 1 Cal. 3d 20, 35 (1969) (citing PROSSER, LAW OF TORTS 829–851 (3d Ed.); *Lugosi v. Universal Pictures,* 25 Cal. 3d 813, 819 (1979) (citing Prosser, *Privacy*, 48 CAL. REV. 383, 389).  As the California Supreme Court explained, the right of privacy, or the right to be "left alone," protects against "exposure to public gaze, as opposed to backyard gossip, which threatened to deprive men of the right of 'scratching wherever one itches.'"  *Forsher v. Bugliosi*, 26 Cal. 3d 792, 808 (1980).

While misappropriation derived from the concept of an invasion of privacy, courts historically recognized the anomaly in permitting celebrities to rely on the doctrine to sue for the use of their likeness, "since their fame seemed inconsistent with the injury to solitude or personal feelings implicitly required." *Gionfriddo*, 94 Cal. App. 4th at 409.  Thus a distinction was developed between the personal right to be left alone and the economic right to exploit ones own likeness.  *Id.*  The right originally protected the publicity value of one's photograph (*Haelan Laboratories v.*

---

[2] In addition to misappropriation of likeness, the right to privacy encompasses three other distinct torts: intrusion, public disclosure of private facts, and false light in the public eye.  *See Eastwood v. Sup. Ct.*, 149 Cal. App. 3d 409, 416 (1983) (superseded by statute on other grounds).

9

*Topps Chewing Gum*, 202 F.2d 866, 868 (2d Cir. 1953)), and eventually evolved to protect the entire commercial identity of the plaintiff. *Downing v. Abercrombie & Fitch* 265 F.3d 994, 1004 (9th Cir. 2001). Today the courts have defined the tort of misappropriation both as an invasion of the right of privacy and a "right of publicity."

The elements of the tort of misappropriation of likeness are: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Eastwood v. Sup. Ct.*, 149 Cal. App. 3d 409, 416 (1983) (superseded by statute on other grounds); *Hilton v. Hallmark Cards*, 599 F.3d 894, 909 (9th Cir. 2010).

The motives of a person charged with invading the right of privacy are not material with respect to the determination whether there is a right of action, and malice is not an essential element of a violation of the right. *See Fairfield v. American Photocopy Equip. Co.*, 138 Cal. App. 2d 82, 87 (1955). Moreover, "[i]nadvertence or mistake is no defense where the publication does in fact refer to the plaintiff in such manner as to violate his right of privacy." *Id.*

### 2. Statutory Misappropriation

In addition to the common-law cause of action for misappropriation of identity, the California legislature enacted a complementary statutory remedy under Civil Code Section 3344 in 1971. *See Eastwood*, 149 Cal. App. 3d at 416–417. Section 3344 provides:

> Any person who knowingly uses another's… photograph…, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, without such person's prior consent…, shall be liable for any damages sustained by the person injured as a result thereof.

Cal. Civ. Code § 3344.

1  Under Section 3344, "a plaintiff must prove all of the elements of the common
2  law cause of action [and i]n addition . . . must allege a knowing use by the
3  defendant as well as a direct connection between the alleged use and the commercial
4  purpose." *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir.
5  2001); *Johnson v. Harcourt, Brace, Jovanovich, Inc.,* 43 Cal. App. 3d 880, 895
6  (1974).

7  Critically, to satisfy the element of "knowing," *plaintiff need only show that*
8  *defendant knew the use of plaintiff's image occurred*, not that defendant knew about
9  the lack of consent. *See* Cal. Civ. Code § 3344 notes of decis. (Lexis 2011) (6.
10 Particular Actions) (citing *Christoff v. Nestle USA, Inc.*, 152 Cal. App. 4th 1439,
11 1464).

12  The statute also requires a direct connection between the use of a plaintiff's
13 name and likeness and a commercial purpose. Courts have found no such
14 connection when the use of the Plaintiff's name or likeness is tangential to the
15 content of the product (*Johnson,* 43 Cal. App. 3d at 895 (article in a textbook)) or
16 the Plaintiff's name or a similar variant is used to describe a character in a fictional
17 work (*Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 323
18 (1997); *Newton v. Thomason*, 22 F.3d 1455, 1461 (1994)). When, however, the
19 likeness is used to "attract the consumers' attention" and "motivate a decision to
20 purchase" defendants' products, courts have found a direct connection with a
21 commercial purpose. *Eastwood,* 149 Cal. App. 3d at 420.

22          ### 3. *VWI and XL are Liable Under Both the Common-Law and*
23          *Statutory Causes of Action for Misappropriation.*

24  VWI and XL's conduct clearly demonstrate they are liable for both common-
25 law and statutory misappropriation.

26  First, there is no dispute that Defendants VWI and XL used an image of
27 Plaintiff, Ann Kirsten Kennis. Ms. Kennis herself (surely no one else is more

11

qualified) has confirmed the image, which is a readily identifiable portrait, was a photograph taken of her. (UF No. 4). Defendants VWI and XL do not dispute that this photograph was then eventually utilized for the cover of Vampire Weekend's *Contra* album, a product that has been sold to the public in vast quantities nationwide. (UF Nos. 3, 5, 10–14).

Along with using the photo directly on the album cover, VWI and XL used the album cover in advertising and merchandise, as well as a large, untitled backdrop for their live stage shows. (UF Nos. 15–16).

Moreover, it is undisputed that VWI contracted with Brody, a man who Kennis has never met, for the use of the photograph, and obtained from Brody a release that Kennis never signed. (UF Nos. 6–8). Although VWI and XL are likely to contend that their agreement with Brody was done in good faith without actual knowledge of the lack of consent, this is irrelevant in an analysis of liability under both the common-law and statutory causes of actions. *See supra* section (B)(2). All that is required to establish liability on this element is an actual use of the Image and on that point, there is no dispute.

Finally, the additional elements required by the Section 3344 claim (a "knowing use by the defendant" and the "direct connection between the alleged use and the commercial purpose") are satisfied here as well.

In sum, to establish a knowing use of the photograph at issue, Plaintiff need not prove that Defendants had actual knowledge that she did not provide consent to that use. *See supra* (B)(2). Rather, Plaintiff merely needs to establish that VWI and XL knew that they used a photograph of her in connection with the album *Contra*. *Id*. Considering the photograph's exclusive and commanding presence in the *Contra* album art, in pre-release promotional activity for the album, and in advertising materials, concert stage backdrops, and merchandise, this fact is beyond dispute.

Plaintiff can readily establish a direct connection between the use of her

photograph and the commercial purpose of the album. An exact reproduction of the photograph dominates the cover of the product, and is the first aspect of the album visible to consumers purchasing the product in both brick and mortar and digital stores such as iTunes. (UF No. 13). The Image was the center of a viral marketing campaign to promote the album in the months prior to its release. (UF Nos. 10–11). Defendants used the Image in merchandise sold at national retail stores. (UF No. 15. Moreover Defendants have utilized a large reproduction of the photograph on the Vampire Weekend website as recently as October 2010 and used vast reproductions of the photograph as a stage backdrop for live performances. (UF Nos. 15–16).

In sum, Defendants VWI and XL's liability under both the common-law and statutory causes of action for misappropriation of likeness is undisputed. Accordingly, this Court should grant summary adjudication of both claims as to liability. The only substantive issues remaining are Plaintiff's damages and Defendants' revenues attributable to the unauthorized uses.

## IV. CONCLUSION

For all the foregoing reasons, this Court should grant summary judgment pursuant to Federal Rule of Civil Procedure 56(d)(2) on the issue of Defendants' liability and allow the case to proceed to trial on the issue of Ms. Kennis' damages.

DATED: May 17, 2011　　　　　　　　　　　　FREUND & BRACKEY LLP

By:　/Thomas A. Brackey II/
　　　Thomas A. Brackey II,
　　　Craig A. Huber
　　　Stephen P. Crump

　　　Attorneys for Plaintiff,
　　　ANN KIRSTEN KENNIS